UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

NELSON MATOS ORTA,

      Petitioner,

    v.                           Case No.:  2:26-cv-01346-SPC-DNF

GARRETT RIPA *et al.*,

      Respondents,

                                     /

## <u>OPINION AND ORDER</u>

Before the Court are petitioner Nelson Matos Orta's Petition for Writ of Habeas Corpus (Doc. 1), the government's response (Doc. 4), and Matos Orta's reply (Doc. 5).  For the below reasons, the Court grants the petition.

Matos Orta is a native of Cuba who entered the United States as a permanent lawful resident on December 12, 1990.  On March 15, 2000, Matos Orta was convicted of conspiracy to commit alien smuggling.  Immigration and Customs Enforcement ("ICE") took Matos Orta into custody on June 13, 2000, and an immigration judge ordered him removed to Cuba on July 10, 2000.  ICE could not remove Matos Orta to Cuba despite his cooperation, and it released him under an order or supervision on October 10, 2000.  He has complied with the orders' reporting requirements, and he has not been arrested in over 20 years.

On October 31, 2025, Matos Orta reported to ICE for a check-in appointment, and ICE revoked the order of supervision and arrested him. Matos Orta argues his detention violates the Fifth Amendment, the Administrative Procedures Act ("APA"), and the *Accardi*[1] doctrine. This is Matos Orta's second habeas challenge to his current detention. In *Matos Orta v. Field Office Director*, 0:26-cv-60953 (S.D. Fla. Apr. 14, 2026), Judge David Leibowitz rejected Matos Orta's procedural challenges to ICE's revocation of his release—that is, Matos Orta's APA and *Accardi* claims. If Matos Orta disagrees with Judge Leibowitz's decision on those claims, he should file an appeal, not a new petition. The *Zadvydas* claim is different. Judge Leibowitz dismissed it as premature. The passage of time puts Matos Orta's *Zadvydas* claim in a materially different posture, and he properly raised it in the present habeas action.

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." *Singh v. U.S. Attorney Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. *Id.* Detention may continue after the removal period, but not indefinitely.

---

[1] *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)

In *Zadvydas v. Davis*, the Supreme Court held, "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. 678, 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." *Id.* at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." *Id* at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. *Id.* Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut the showing.

*Id.*

Because the six-month period for presumptively reasonable detention has expired, *Zadvydas*'s burden-shifting framework applies. Matos Orta has carried his initial burden by showing a good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE was unable to remove him to Cuba in 2000, and there is no indication Cuba is likely to accept him now.

The burden thus shifts to the government.  The government claims Matos Orta frustrated ICE's removal efforts by refusing to sign the certificate of service on a Notice of Removal.  But the government does not explain the importance of his signature on that form.  In fact, in a declaration attached to the response, a deportation officer states ICE tried to remove Matos Orta to Mexico on March 2, 2026, without a signed Notice of Removal.  It is not clear why that attempt was unsuccessful, but the deportation officer does not blame the lack of a signed Notice of Removal.  The Court is not aware of any statute or regulation that requires a signed Notice of Removal before a noncitizen can be removed.  In any event, ICE claims it still intends to remove Matos Orta to Mexico, but it offers no evidence Mexico will likely accept him.

The Court finds no significant likelihood Matos Orta will be removed in the reasonably foreseeable future.  He is entitled to release from detention under *Zadvydas*.  If removal becomes likely in the reasonably foreseeable future, ICE can detain Matos Orta to "assur[e] [his] presence at the moment of removal." *Zadvydas*, 533 U.S. at 680.

Accordingly, it is hereby

**ORDERED:**

Nelson Matos Orta's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

1. The respondent shall release Matos Orta within 24 hours of this Order and provide him telephone access so he can arrange his transportation from the facility.

2. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on May 8, 2026.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: FTMP-1
Copies:  All Parties of Record